**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARTHUR MARKS, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>SUNCOKE ENERGY PARTNERS, L.P., MICHAEL G. RIPPEY, P. MICHAEL HARDESTY, JOHN W. SOMERHALDER II, ALVIN BLEDSOE, FAY WEST, KATHERINE T. GATES, MARTHA CARNES, SUNCOKE ENERGY, INC., SUSAN R. LANDAHL, PETER B. HAMILTON, ROBERT A. PEISER, JOHN W. ROWE, and JAMES E. SWEETNAM, )<br><br>Defendants. ) | Case No.  1:19-cv-00693-CFC |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR
A PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS .................................................................................................2

I.      BACKGROUND OF THE COMPANY AND THE PROPOSED MERGER ..................2

LEGAL STANDARD AND ARGUMENT .........................................................................6

I.      THE PRELIMINARY INJUNCTION STANDARD ..........................................................6

II.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS ..............7

        A.      Elements of the Claims .................................................................... 7

        B.      Regulation G was Violated .............................................................. 9

        C.      The S-4/A is Materially Misleading and Incomplete in Violation of
                Rule 14a-9 ..................................................................................... 12

        D.      The Other Elements of Section 14(a) Claim Are Met ......................... 13

III.    PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT THE COURT'S
        INTERVENTION ................................................................................................................14

IV.     THE BALANCE OF HARDSHIPS TIPS IN PLAINTIFF'S FAVOR AND A
        PRELIMINARY INJUNCTION WOULD BE IN THE PUBLIC INTEREST ................16

CONCLUSION ..................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*A.P. Green Indus., Inc. v. E. Rock Partners, Inc.*,
    726 F. Supp. 757 (E.D. Mo. 1989)........................................................................16

*Allergan, Inc. v. Valeant Pharm. Int'l, Inc.*,
    No. SACV 14-1214 DOC(ANx), 2014 WL 5604539 (C.D. Cal. Nov. 4, 2014)..............14, 17

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010)......................................................................13

*Brown v. Brewer*,
    No. CV 06-3731-GHK, 2008 WL 6170885 (C.D. Cal. July 14, 2008) ..................................13

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)...................................................................................8

*Campbell v. Transgenomic, Inc.*,
    916 F.3d 1121 (8th Cir. 2019) ................................................................................9

*David P. Simonetti Rollover IRA v. Margolis*,
    C.A. No. 3694-VCN, 2008 WL 5048692 (Del. Ch. June 27, 2008)................................17, 18

*Erickson v. Hutchinson Tech. Inc.*,
    158 F. Supp. 3d 751 (D. Minn. 2016)......................................................................13

*Folger Adam Co. v. PMI Indus., Inc.*,
    938 F.2d 1529 (2d Cir. 1991).................................................................................9

*Gen. Steel Indus., Inc. v. Walco Nat'l Corp.*,
    No. 81-1310-C, 1981 WL 17552 (E.D. Mo. Nov. 24, 1981).........................................16

*In re K-Tel Int'l, Inc. Sec. Litig.*,
    300 F.3d 881 (8th Cir. 2002) .................................................................................9

*Krauth v. Exec. Telecard, Ltd.*,
    890 F. Supp. 269 (S.D.N.Y. 1995)..........................................................................15

*Kronfeld v. Trans World Airlines, Inc.*,
    832 F.2d 726 (2d Cir. 1987)...................................................................................9

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
    148 F. Supp. 2d 1141 (D. Kan. 2001).................................................................15, 16, 17

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
    11 A.3d 1175 (Del. Ch. 2010).............................................................................15, 16

*Mid-Continent Bancshares, Inc. v. O'Brien*,
   No. 81-1395-C, 1981 WL 1404 (E.D. Mo. Dec. 11, 1981) ....................................16

*In re Netsmart Techs., Inc. S'holders Litig.*,
   924 A.2d 171 (Del. Ch. 2007)...........................................................................15

*ODS Techs., L.P. v. Marshall*,
   832 A.2d 1254 (Del. Ch. 2003)..........................................................................15

*Polaroid Corp. v. Disney*,
   862 F.2d 987 (3d Cir. 1988).................................................................................6

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977)............................................................................................8

*SEC v. Mayhew*,
   121 F.3d 44 (2d Cir. 1997)..................................................................................9

*SEC v. Todd*,
   642 F.3d 1207 (9th Cir. 2011) ............................................................................9

*Smith v. Robbins & Myers, Inc.*,
   969 F. Supp. 2d 850 (S.D. Ohio 2013) ...............................................................7

*Sonesta Int'l Hotels Corp. v. Wellington Assocs.*,
   483 F.2d 247 (2d Cir. 1973)..............................................................................17

*The Spectranetics Corp.*,
   SEC Staff Comment Letter (July 18, 2017).......................................................11

*St. Louis Police Ret. Sys. v. Severson*,
   No. 12-CV-5086 YGR, 2012 WL 5270125 (N.D. Cal. Oct. 23, 2012) ............15, 16

*Tracinda Corp. v. DaimlerChrysler AG*,
   364 F. Supp. 2d 362 (D. Del. 2005)....................................................................9

*TSC Indus. v. Northway, Inc.*,
   426 U.S. 438 (1976)........................................................................................8, 9

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991)........................................................................................14

*Youku Tudou Inc., et al.*,
   SEC Staff Comment Letter (Jan. 20, 2016) .......................................................11

**Statutes**

15 U.S.C. § 78n(a)(1).............................................................................................12

15 U.S.C. § 78u-4(b)(1) ..................................................................................................9

**Other Authorities**

17 C.F.R. § 240.14a-9 .................................................................................................12

17 C.F.R. § 240.14a-9(a) ..........................................................................................8, 12

17 C.F.R. § 244.100 ..................................................................................................8, 10

17 C.F.R. § 244.101(a)(1)..............................................................................................10

# INTRODUCTION[1]

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Arthur Marks ("Plaintiff") respectfully submits this memorandum of law in support of his motion to enjoin the June 27, 2019 special unitholder meeting to vote ("Unitholder Vote") on the proposed acquisition of SunCoke Energy Partners, L.P. ("SXCP" or the "Company") by SunCoke Energy, Inc. ("SXC" or "SunCoke").

Plaintiff has alleged that Defendants[2] violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a)), SEC Rule 14a-9 (17 C.F.R. 240.14a-9), and Regulation G, 17 C.F.R. § 244.100 in connection with the dissemination of a Form S-4 Registration Statement[3] (the "S-4/A"[4]) that recommended unitholders vote in favor of the proposed merger of SXCP with SXC (the "Proposed Merger").  Plaintiff seeks injunctive relief to enjoin the Unitholder Vote scheduled for June 27, 2019 pending the dissemination of supplemental disclosures to correct the materially misleading S-4/A.

Since the defeat of its last takeover attempt approximately two years ago, SunCoke has

---

[1]     Citations to "¶ _" are to paragraphs of Plaintiff's Amended Class Action Complaint for Violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 filed on May 31, 2019 ("AC") (ECF No. 17).  To the extent not otherwise defined herein, capitalized terms shall have the same meaning as in the AC.

[2]     "Defendants" refers to the defendants named in the AC including SXCP, SXCP's board of directors Michael G. Rippey, P. Michael Hardesty, John W. Somerhalder II, Alvin Bledsoe, Fay West, Katherine T. Gates, Martha Carnes, SXC and the SXC's board of directors Susan R. Landahl, Peter B. Hamilton, Robert A. Peiser, John W. Rowe, and James E. Sweetnam.

[3]     All versions of the initial Form S-4 and all versions and amendments thereto filed with the SEC are incorporated by reference herein.

[4]     The S-4 has been amended several times, including on April 11, 2019, May 16, 2019 and May 20, 2019, but none of the amendments addressed the violations of Sections 14(a) and 20(a) of the Exchange Act contained in the S-4.  The S-4, including the amendments, is referred to as the "S-4/A" or the "Registration Statement."  ¶ 9.  The May 20, 2019 S-4/A is attached as Exhibit 1 to the Declaration of Michael Van Gorder in Support of Plaintiff's Motion for a Preliminary Injunction filed herewith.

been on a campaign to acquire beneficial ownership of a majority of the units of SXCP, which it has finally done. However, the key to this case is that SunCoke's beneficial ownership of those units does not and cannot equal control of the units' votes. This is because of the exceptionally conflicted position SunCoke is in. For this deal to go forward the votes of a majority of units must be cast in favor of the Proposed Merger. The first step toward that end required the affirmative votes of the SXCP Conflicts Committee that actually controls the votes of the majority of SXCP units. SunCoke has been cavalier in withholding material information from the Conflicts Committee, inducing it to agree to recommend the Proposed Merger so that Sun Coal & Coke LLC ("SC&C") would deliver the required votes without complete information, and now claiming that the upcoming vote is effectively moot.[5] The vote is not moot and must be postponed.[6]

## STATEMENT OF FACTS

## I.   BACKGROUND OF THE COMPANY AND THE PROPOSED MERGER

SXCP is a publicly-traded Master Limited Partnership that primarily produces coke used for the blast furnace production of steel in the United States. ¶ 44. The Company has two operating segments, Domestic Coke and Logistics. *Id.* SXCP also provides metallurgical and thermal coal mixing and handling terminal services, as well as operates an export terminal in the United States Gulf Coast. *Id.* The Company also provides coal handling and/or mixing services to steel, coke,

---

[5]   Defendants filed a form 8-K that reports "While, as a result of the delivery of the SC&C Written Consent, **no further action by any unitholder of SXCP is required** under applicable law, or otherwise, to adopt the Merger Agreement and the transactions contemplated thereby, including the Merger, the consent process for holders of SXCP Common Units with respect to the Merger Agreement and the Merger will remain open until 9:00 a.m., Central Time, on June 27, 2019." SunCoke Energy Partners, L.P. Current Report (Form 8-K) (May 24, 2019) (emphasis added), *available at* www.sec.gov/Archives/edgar/data/1555538/000119312519157076/d737 781ddefa14a.htm

[6]   Plaintiff's Counsel reached out to Defense Counsel in an effort to reach agreement on the matters set forth in the motion, but no resolution was reached. Therefore, Plaintiff has filed this Motion and will also file a motion seeking a hearing on this Motion prior to the end of the consent process/Unitholder Vote on June 27, 2019.

electric utility and coal mining customers. *Id.* SC&C is the single member of the SXCP general partner SunCoke Energy Partners LLC GP ("General Partner") and is a Delaware limited liability company. ¶¶ 2, 40. SC&C, which is the record holder and beneficial owner of 61.7% of the SXCP Common Units outstanding, is in turn wholly owned by SunCoke. ¶¶ 2, 5.[7]

On February 4, 2019, Defendants entered into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's common unitholders will receive 1.40 shares of common stock of SunCoke for each SXCP unit they own plus a fraction of a share of SunCoke common stock equal to the product of the number of days, beginning with the first day of the most recent full calendar quarter with respect to which an SXCP unitholder distribution record date has not occurred and ending on the day immediately prior to the closing of the merger, multiplied by a daily distribution rate equal to the quotient of the most recent regular quarterly cash distribution paid by SXCP divided by 90, whose product is then divided by $10.91, the closing price of SunCoke common stock as of February 1, 2019 (the "Merger Consideration"). ¶ 7. Based on the exchange ratio and current trading price of SXC stock, as of June 3, 2019, the estimated per unit value of the Merger Consideration is approximately $10.61 per unit.

Pursuant to the Partnership Agreement, the Proposed Merger must be approved by a vote of a majority of the outstanding common units excluding the units held by the General Partner and its affiliates. ¶ 8. The votes of the General Partner and its affiliates may be counted if the General Partner's Conflict Committee recommends the Proposed Merger. *Id.*; Partnership Agreement,

---

[7]     SXCP is governed by the First Amended and Restated Agreement of Limited Partnership of SunCoke Energy Partners, L.P. dated January 24, 2013 ("Partnership Agreement"). ¶ 3. The General Partner, the General Partner Board of Directors, the Conflicts Committee *and any General Partner affiliates that cause the General Partner to act*, are obligated under the terms of the Partnership Agreement to act in their respective capacities in good faith. Partnership Agreement, Section 7.9. ¶ 4.

Section 14.3(a), (b); SunCoke Energy Partners, L.P. Annual Report 27 (Form 10-K) (Feb. 15, 2018); *see also* S-4/A Explanatory Note.

On March 8, 2019, in order to convince SXCP unitholders to vote in favor of the Proposed Merger, the materially incomplete and misleading S-4/A was filed with the SEC.  ¶ 9.  The S-4/A contains the recommendation of the General Partner's Conflicts Committee recommending the Proposed Merger to SXCP unitholders.  *See* ¶ 10; S-4/A 39-44.  Consequently, the General Partner's affiliate's (*i.e.*, SC&C) may vote its units for the approval of the Proposed Merger with the other common unitholders. ¶10.  At the time the Merger Agreement was signed, SC&C entered into a Support Agreement (the "Support Agreement") pursuant to which SC&C agreed to support the Proposed Merger by delivering a written consent covering all the 61.7% of outstanding common units it owns approving the Merger, within two business days *after* the effectiveness of the S-4/A (the "Written Consent").  ¶ 11.  Plaintiff alleges that this means that the Conflicts Committee would have been relying in part on the legally defective and materially incomplete S-4/A that was the subject of this lawsuit at the time the decision to tender the votes was finalized. *Id.*

Plaintiff alleges that "[i]n connection with the Proposed Merger, management of SunCoke prepared non-public projections relating to the future financial and operating performance of SunCoke and SXCP with respect to the fiscal years ending December 31, 2019 through 2023." (¶ 12; S-4/A 44) and that the Conflicts Committee was given the same summary of the projections that are in the misleading S-4/A. ¶ 81.  This information is indisputably material due to the astounding conflicts of interest that SXC concedes in the S-4/A by disclosing that the SXCP's internal projections that are summarized in the S-4/A and used by the Conflicts Committee and its financial advisor to weigh the fairness of the Proposed Merger were created by employees of SXC.

¶ 12; S-4/A 20 and 44.  These projections were provided to the Conflicts Committee to use in deciding how to vote, but only summaries prepared by SXC were provided to SXCP's unitholders. ¶ 12.  The summary of the projections – the same incomplete and misleading summary that is in the S-4/A – were provided to the Conflicts Committee would have been material to SXCP's unitholders.  *Id.*  The supporting information contained in the projections would have been material, and full knowledge of what the Conflicts Committee considered in formulating its recommendation would have also been material to SXCP's unitholders.  *Id.*

Plaintiff further alleges that the S-4/A is materially deficient and violates SEC Regulations G and 14a-9 because while touting the fairness of the Merger Consideration to unitholders in the S-4/A, Defendants have failed to disclose certain material information that is necessary for unitholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the S-4/A materially incomplete and misleading.  ¶15.  In January 2018, analysts had valued SXCP between $21 and $30 per common unit.  ¶ 18.  SC&C has acquired SXCP units in the open market, to reach its current 61.7% ownership, at per unit prices of $17.67 to $18.00, far above the Merger Consideration.  *Id.*  Thus, the Merger Consideration is not fair to SXCP unitholders.  *Id.*  A prior effort by SXC to squeeze out minority unitholders through an acquisition of SXCP failed when the Conflicts Committee did not support the transaction, which at that time offered higher consideration than the Merger Consideration.  ¶ 47.

In particular, the S-4/A contains materially incomplete and misleading information concerning the financial projections for SXCP and SXC that were prepared by SXC and relied on by Defendants in recommending that SXCP unitholders vote in favor of the Proposed Merger.  ¶ 54; S-4/A 42.  The financial projections were also utilized by SXCP's financial advisor, Citigroup

Global Markets Inc. ("Citi"), in conducting certain valuation analyses in support of its fairness opinion. ¶ 16. The material omissions and misrepresentations of the projected financial performance of SXCP and SXC bears directly on the valuation of the outstanding common units and the fairness of the Merger Consideration. ¶ 17. The previous unsuccessful attempt to take over SXCP and squeeze out minority unitholders in a similar transaction that was rejected by the Conflicts Committee was done at a value of $17.60. *Id.* Plaintiff has submitted the affidavit of M. Travis Keath, CFA, CPA/ABV in support of the allegations that the omitted information is material. *See* AC, Ex. A.

On May 24, 2019, SXCP disclosed that SC&C delivered the Written Consent and that no further action by any unitholder is required to adopt the Merger Agreement. Nevertheless, SXCP disclosed that the "consent process" for unitholders will remain open until 9:00 am on **June 27, 2019**. Plaintiff alleges that the Conflict Committee's recommendation was improper because it was based on the misleading S-4/A that included only the summary of internal financial projections created by SXC. ¶ 19.

## LEGAL STANDARD AND ARGUMENT

## I.    THE PRELIMINARY INJUNCTION STANDARD

"The party seeking a preliminary injunction has the burden of showing (1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted . . . . [W]hile the burden rests upon the moving party to make these two requisite showings, the district court should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Polaroid Corp. v. Disney*, 862 F.2d 987, 991 (3d Cir. 1988) (internal quotation marks omitted).

Here, a preliminary injunction is necessary to prevent Defendants from holding the Unitholder Vote without providing unitholders with material information. The time period in which consideration may be given to Plaintiff's claims is compressed since Defendants have set the Unitholder Vote for June 27, 2019. Given the irreparable harm that Plaintiff and the other unitholders of SXCP will suffer if they are forced to cast an uniformed and/or misinformed vote, Plaintiff respectfully moves for a preliminary injunction.[8]

## II.  PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS

As discussed herein, Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the filing of materially incomplete and misleading disclosures in the S-4/A filed with the SEC. The S-4/A is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Merger. Absent this information, Plaintiff and his fellow SXCP unitholders will be deprived of their right to make an informed decision regarding whether to vote for or against the Proposed Merger on June 27, 2019. Accordingly, Plaintiff is likely to succeed on his Sections 14(a) and 20(a) claims.

### A.  Elements of the Claims

Plaintiff alleges that Defendants violated Regulation G and Rule 14a-9, each of which constitute a violation of Sections 14(a) and 20(a) of the Exchange Act, by filing the materially incomplete S-4/A with the SEC and asking SXCP's unitholders to rely on the information contained therein and vote in favor of the Proposed Merger.[9]

---

[8]  Given the compressed time frame, Plaintiff also has simultaneously filed a motion to shorten the briefing schedule for this preliminary injunction motion and for an expedited hearing on the injunction motion.

[9]  As Plaintiff's Section 14(a) claim is a predicate to his claim under Section 20(a), the Court need only consider whether Plaintiff is likely to succeed on his Section 14(a) claim for purposes of the instant motion. *See Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 875 (S.D. Ohio 2013) (noting that liability under § 20(a) requires a showing of a primary violation under § 14(a)).

Section 14(a)'s "fundamental purpose" is to require "full disclosure" of all material facts. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 478 (1977).   A plaintiff can establish a violation of Section 14(a) by showing the registrant issued solicitation materials that violate an SEC regulation.

Regulation G requires that "[w]henever a registrant . . . publicly discloses material information that includes a non-GAAP financial measure, the registrant **must** accompany that non-GAAP financial measure with: (1) A presentation of the most directly comparable financial measure calculated and presented in accordance with Generally Accepted Accounting Principles (GAAP); **and** (2) A reconciliation . . . which **shall** be quantitative for historical non-GAAP measures presented, and **quantitative**, to the extent available without unreasonable efforts, for **forward-looking information**, of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP . . . ." 17 C.F.R. § 244.100(a) (emphasis added).   There are two elements that must be alleged for this claim, (i) the use of non-GAAP financial forecasts that are (ii) material.

Rule 14a-9 prohibits proxy solicitations containing statements that are "false or misleading with respect to any material fact" or omit "any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).   To allege a violation of Rule 14a-9, a plaintiff must allege three elements: (1) that the proxy contained a material misrepresentation or omission; (2) that the proxy caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.   *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004).

For both Regulation G and Rule 14a-9, the information must be material.   "An omitted fact

is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 414-15 (D. Del. 2005), *aff'd*, 502 F.3d 212 (3d Cir. 2007). "[I]t is well-established that a material fact need not be outcome-determinative; that is, it need not be important enough that it 'would have caused the reasonable investor to change his vote.' Rather, the information need only be important enough that it 'would have assumed actual significance in the deliberations of the reasonable shareholder.'" *Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529, 1533 (2d Cir. 1991) (quoting *TSC Indus.*, 426 U.S. at 449). Information regarding a company's financial condition, including projections, is material to investment. *Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1126 (8th Cir. 2019); *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 735-37 (2d Cir. 1987); *see also SEC v. Todd*, 642 F.3d 1207, 1221 (9th Cir. 2011); *see also SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997) ("Material facts include those which affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities.") (internal quotation marks omitted). "Generally, the issue of whether a public statement is misleading is a mixed question of law and fact for the jury." *In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 897 (8th Cir. 2002) (evaluating materiality of misleading public statements under § 10(b) and Rule 10b–5).[10]

## B.    Regulation G was Violated

The S-4/A fails to provide material information concerning SXCP's and SXC's financial projections, which were developed by SXC's management and relied upon by the SXCP board

---

[10]    Plaintiff's Section 14(a) claim is subject to the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), which require that the complaint "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

and the Conflicts Committee and the SXC board in recommending that the unitholders vote in favor of the Proposed Merger.  ¶ 54.  In particular, the S-4/A contains values for numerous non-GAAP financial projections for SXC and  SXCP:  (1) Adjusted EBITDA attributable to SXCP, (2) Distributable Cash Flow, (3) Total Distributed Cash Flow, (4) Standalone SunCoke Adjusted EBITDA, (5) SXCP Distribution, and (6) Cash Available for Dividends.  ¶ 55.[11]  For each of these non-GAAP projections, Defendants failed to disclose the line items used to calculate these projections and fail to reconcile them to their most comparable GAAP measure. ¶¶ 55- 61.

When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that unitholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100; *see also* Keath Aff. ¶¶ 42-51; ¶¶ 62-64.

Defendants must comply with Regulation G.[12]   More specifically, Defendants must disclose the most directly comparable GAAP financial measure and a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes

---

[11]    Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure.  17 C.F.R. § 244.101(a)(1).

[12]    The AC contains detailed allegations that the non-GAAP projections and omitted GAAP information is material (¶¶ 81-129) and also submitted the Keath Affidavit regarding materiality.

"this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[13] ¶ 65.

The SEC has required compliance with Regulation G, including reconciliation requirements in other merger transactions. *Compare Youku Tudou Inc., et al.*, Correspondence 5 (Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP financials relating to a business combination),[14] with *Youku Tudou Inc., et al.*, SEC Staff Comment Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial information is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-A and is thus not excepted from Rule 100 of Regulation G.");[15] *see Harbin Electric, Inc.*, Correspondence 29 (Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have added a reconciliation of actual and projected EBIT to GAAP net income . . . .").[16] ¶ 66.

---

[13]   SEC, Final Rule: Conditions for Use of Non-GAAP Financial Measures (Jan 22, 2003), *available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, Final Rule").

[14]   *Available   at*   https://www.sec.gov/Archives/edgar/data/1442596/000110465916089133/filename1.htm.

[15]   *Available   at*   https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/filename1.pdf.

[16]   *Available   at*   https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/filename1.htm. *See also Actel Corp.*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of Actel's Financial Advisor, page 24 . . . This section includes non-GAAP financial measures. Please revise to provide the disclosure required by Rule 100 of Regulation G."), *available   at*   https://www.sec.gov/Archives/edgar/data/907687/000000000010060087/filename 1.pdf. *See also The Spectranetics Corp.*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4. The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the reconciliation required under Rule 100(a) of Regulation G"), *available at* https://www.sec.gov/Archives/edgar/data/789132/000000000017025180/filename1.pdf.   The SEC Office of Mergers and Acquisitions applied Regulation G in these transactions and reflect the SEC's official position.   Any claim that the SEC has officially sanctioned the use of non-GAAP financial forecasts for business combinations when the Board itself created and relied on such non-GAAP forecasts to recommend a transaction such at the Proposed Merger is incorrect. The SEC's website provides certain unofficial guidance for certain matters, called Compliance and Disclosure Interpretations ("C&DI's") which through the use of Q&As reflect the views of particular SEC

### C.      The S-4/A is Materially Misleading and Incomplete in Violation of Rule 14a-9

Plaintiff alleges that the non-GAAP financial projections, without the required reconciliation, were misleading and that these financial projections used by Citi rendered the valuation analyses misleading (¶¶ 54, 68).  15 U.S.C. § 78n(a)(1); 17 C.F.R. § 240.14a-9(a).

Defendants' failure to disclose material information regarding the Company's projections violates SEC Rule 14a-9.  Rule 14a-9 prohibits making a statement in a solicitation which is "false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ."  17 C.F.R. § 240.14a-9. Plaintiff alleges the S-4/A's violation of Regulation G, the lack of reconciliation, or at the very least the line items utilized in calculating the non-GAAP measures renders the financial projections and the Citi valuations materially misleading as unitholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures. The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures and adopted Regulation G[17] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[18]  ¶ 64.

As such, in order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

---

staff and on which certain issuers have in the past claimed an exemption from Regulation G.  The SEC itself expressly disclaims C&DI's as they are not regulations that have been reviewed by the SEC, and the SEC expressly states that they are not binding and should not be relied on.  *See* www.sec.gov/divisions/corpfin/cfguidance.shtml.

[17]     Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[18]     SEC, Final Rule.

In sum, the S-4/A independently violates: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the S-4/A independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4/A to garner votes in support of the Proposed Merger from SXCP unitholders.

### D.    The Other Elements of Section 14(a) Claim Are Met

Plaintiff has alleged the other elements of a Section 14(a) claim as well.

First, "'[a]s a matter of law, the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the . . . negligence standard.  Accordingly, a director may be found negligent under Section 14(a) for a failure to notice material omissions upon reading a proxy statement.'"  *Erickson v. Hutchinson Tech. Inc.*, 158 F. Supp. 3d 751, 757 (D. Minn. 2016) (quoting *Brown v. Brewer*, No. CV06-3731-GHK SHX, 2010 WL 2472182, at *24 (C.D. Cal. June 17, 2010)).

Second, Plaintiff alleges that the S-4/A is an "essential link" necessary for the Proposed Merger to be consummated.  *Erickson*, 158 F. Supp. 3d at 757 (noting that because a merger requires shareholder approval for the transaction, it is accepted within this jurisdiction that a proxy statement forms an essential link in such circumstances); *see also Brown v. Brewer*, No. CV 06-3731-GHK (JTLx), 2008 WL 6170885, at *5 (C.D. Cal. July 14, 2008) (holding that a proxy is an essential link in the approval of a merger as shareholder approval is required to complete the transaction); *see also In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 292 n.3 (S.D.N.Y. 2010) (holding that a "Joint Proxy was an essential link in the [merger] transaction because the acquisition could not have occurred without the shareholder vote.").

Defendants will dispute this element and argue that under *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1099 (1991), there is no transaction causation because SXC controls SXCP through SC&C and since SC&C agreed to approve the Proposed Merger, there is no need for a Unitholder Vote. *See* Defs' Opening Br. in Supp. of Mot. to Dismiss Class Action Complaint 8-10, ECF No. 12. This argument fails.

Plaintiff alleges that simultaneously with the execution of the Merger Agreement on February 4, 2019, in reliance on the Conflicts Committee's recommendation, SC&C entered into the Support Agreement with SXCP (signed by Defendant Fay West for both parties), pursuant to which, among other things, SC&C agreed to support the Merger by delivering a written consent, covering the 61.7% of outstanding common units it owns voting in favor of the Merger, within two business days *after* the effectiveness of the S-4/A. This means that the independent Conflicts Committee would have been relying in part on the legally defective and materially incomplete S-4/A that was the subject of the lawsuit at the time the decision to tender the votes was finalized. ¶ 11. Further, the Conflicts Committee relied on the material non-public financial projections for SXCP that were prepared by employees of SXC. ¶ 82.

## III.   PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT THE COURT'S INTERVENTION

Plaintiff and SXCP's other public unitholders will suffer irreparable harm by being forced to decide how to vote on the Proposed Merger without the material information referenced above. "An uninformed shareholder vote is often considered an irreparable harm, particularly because the raison d'etre of many of the securities laws is to ensure that shareholders make informed decisions." *Allergan, Inc. v. Valeant Pharm. Int'l, Inc.*, No. SACV 14-1214 DOC(ANx), 2014 WL 5604539, at *16 (C.D. Cal. Nov. 4, 2014). As another U.S. District Court stated in an analogous context:

> The Supreme Court has recognized that use of solicitation which is materially misleading poses the kind of irreparable injury to stockholders which can justify injunctive relief prior to a shareholder's meeting . . . . irreparable injury would occur absent an injunction prohibiting the voting of proxies based upon false and misleading information. At a minimum, the free and intelligent voting rights of plaintiff's shareholders will be forfeited if such votes are exercised based upon false or misleading information. Monetary damages cannot restore the right of shareholders to effectively exercise their corporate suffrage rights.

*Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149-50 (D. Kan. 2001) (citations omitted) (internal quotation marks omitted).

It is well established that unitholders face irreparable harm if they are forced to vote on a corporate merger without being fully informed. *See, e.g.*, *Krauth v. Exec. Telecard, Ltd.*, 890 F. Supp. 269, 287 (S.D.N.Y. 1995) ("Irreparable injury results from the use of false and misleading proxies when the free exercise of shareholders' voting rights will be frustrated."); *ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003) ("The threat of an uniformed stockholder vote constitutes irreparable harm."); *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 207 (Del. Ch. 2007) (stating that courts have "typically found a threat of irreparable injury to exist when it appears stockholders may make an important voting decision on inadequate disclosures.").

Courts across the country have found that this exact threat of irreparable harm is sufficient to enjoin a proposed merger until defendants provide additional information concerning the transaction to unitholders. *Lone Star*, 148 F. Supp. 2d at 1150; *St. Louis Police Ret. Sys. v. Severson*, No. 12-CV-5086 YGR, 2012 WL 5270125, at *6 (N.D. Cal. Oct. 23, 2012) ("disclosure deficiencies cannot be remedied effectively by an 'after-the-fact damages' case. Thus, '[i]t is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected.'") (quoting *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001)); *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1176 (Del. Ch. 2010) (enjoining merger "until corrective disclosures

are made on three issues in the corporation's proxy statement."); *see also e.g.*, *A.P. Green Indus., Inc. v. E. Rock Partners, Inc.*, 726 F. Supp. 757, 760 (E.D. Mo. 1989) ("Stock transactions, particularly when made in anticipation of or to effectuate a takeover bid of some kind, are inherently difficult to unscramble and therefore constitute irreparable harm to the shareholders of the target company if based upon false or misleading disclosures."); *Gen. Steel Indus., Inc. v. Walco Nat'l Corp.*, No. 81-1310-C, 1981 WL 17552, at *6 (E.D. Mo. Nov. 24, 1981) ("Unless an injunction is issued, GSI and its shareholders will suffer irreparable harm in that they are being asked to decide whether to tender, hold or sell their shares without the full and accurate disclosure required by Sections 14(d) and (e) of the federal securities laws.") (citing *Life Investors, Inc. v. AGO Holding, N.V.*, No. 81-2065, 1981 WL 15483 (8th Cir. Oct. 21, 1981)).

Accordingly, Plaintiff has established that he and SXCP's other public unitholders "would suffer irreparable injury in the absence of injunctive relief designed to remedy any false or misleading information in defendant's [S-4/A]." *Lone Star*, 148 F. Supp. 2d at 1150.

## IV.   THE BALANCE OF HARDSHIPS TIPS IN PLAINTIFF'S FAVOR AND A PRELIMINARY INJUNCTION WOULD BE IN THE PUBLIC INTEREST

"[A]n injunction is in the public interest insofar as it is necessary to effectuate the policies of the Securities Exchange Act of 1934. . . ." *Mid-Continent Bancshares, Inc. v. O'Brien*, No. 81-1395-C, 1981 WL 1404, at *12 (E.D. Mo. Dec. 11, 1981).  Here, given that Plaintiff only seeks an order enjoining the Unitholder Vote until Defendants provide SXCP's unitholders with the narrow and readily available material information discussed above, the balance of equities heavily weigh in Plaintiff's favor and an injunction is in the public interest.  Indeed, "[a] fully informed shareholder vote in compliance with Section 14(a) of the Securities Exchange Act [ ] is in the best interests of shareholders and the shareholding public generally." *St. Louis Police Ret. Sys.*, 2012 WL 5270125, at *6.  As another court stated in an opinion granting a motion for a preliminary

injunction based upon materially incomplete and misleading SEC filings made in connection with

a merger transaction:

> If the Court orders corrective disclosures, Defendants would only incur the expense of making those disclosures. An injunction ordering corrective disclosures is also in the public interest, as it prevents an uninformed shareholder vote. Thus, the Court finds that the potential threat of an uninformed vote in this case presents an irreparable harm, that the balance of equities tips in Plaintiffs' favor, and that the proposed injunction to make corrective disclosures is in the public interest.

*Allergan, Inc.*, 2014 WL 5604539, at *16.   Similarly, another U.S. District Court in analogous

circumstances stated:

> [P]laintiff is asking the court to order defendant to make a corrective disclosure filing with the SEC. Such a filing would take a brief amount of time to prepare and file and would involve little expense. The hardship to defendant should the injunction issue is thus minimal. Finally, the court finds that the requested injunction would not be adverse to the public interest. Indeed, the public interest always lies with the truth. Again assuming the existence of materially misleading information, a full disclosure of such information, prior to any vote based thereon, will best serve the shareholding public.

*Lone Star*, 148 F. Supp. 2d at 1150.

Absent injunctive relief, Plaintiff and SXCP's other public unitholders will be forced to

make a decision about how to vote on the Proposed Merger without the material information

identified above.   In contrast, any required postponement of the Unitholder Vote would delay the

consummation of the Proposed Merger – *if at all* – for only so long as would be necessary for

SXCP's unitholders to digest the newly disclosed information.   Indeed, "when it appears likely

that the offer may contain materially misleading statements or omissions as made, the interest of

the shareholders and of the public in full disclosure of relevant circumstances renders preliminary

injunctive relief an appropriate method of remedying the deficiencies in disclosure before the offer

is consummated." *Sonesta Int'l Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247, 250-51 (2d Cir.

1973); *see also David P. Simonetti Rollover IRA v. Margolis*, C.A. No. 3694-VCN, 2008 WL

5048692, at *14 (Del. Ch. June 27, 2008) ("Ordinarily, balancing the equities between (a) ordering full and complete disclosure to enable stockholders to make an informed decision and (b) a short delay required to allow additional disclosure is a fairly simple task . . . . In sum, the equities clearly favor the interim relief necessary to allow the stockholders the opportunity to be an informed voter[.]").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enjoin the Unitholder Vote until Defendants disclose the material information discussed above.

Dated: June 4, 2019

Respectfully submitted,

**FARUQI & FARUQI, LLP**

OF COUNSEL:

**FARUQI & FARUQI, LLP**

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

By: _/s/ Michael Van Gorder_
Michael Van Gorder (#6214)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*