IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE SUNCOKE ENERGY PARTNERS, L.P. | Civil Action No. 19-cv-693-CFC |

Michael Van Gorder, FARUQI & FARUQI, LLP, Wilmington, Delaware; Nadeem Faruqi, James M. Wilson, Jr., FARUQI & FARUQI, LLP, New York, New York

 *Counsel for Plaintiffs*

Peter J. Walsh, Jr., Alan R. Silverstein, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; S. Mark Hurd, Thomas P. Will, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; David D. Sterling, Paul R. Elliott, Matthew B. Allen, BAKER BOTTS L.L.P., Houston, Texas; Michelle A. Reed, M. Scott Barnard, AKIN GUMP STRAUSS HAUER & FELD LLP, Dallas, Texas

 *Counsel for Defendants*

**MEMORANDUM OPINION**

September 9, 2020
Wilmington, Delaware

[signature]
COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

This case is a consolidation of three related actions: *Marks v. Suncoke Energy Partners, L.P.*, 19-cv-00693-CFC; *Zolotarev v. Suncoke Energy Partners, L.P.*, 19-cv-01055-CFC; and *Cohn v. Suncoke Energy Partners, L.P.*, 19-cv-01107-CFC. *See* D.I. 52. Pending before me is Defendants' Motion to Dismiss Consolidated Class Action Complaint (D.I. 56).

## I.  BACKGROUND[1]

Lead Plaintiff Michael Cohn was a unitholder of SunCoke Energy Partners, L.P. (SXCP), a Delaware limited partnership. D.I. 55 ¶¶ 23-24. The sole general partner of SXCP was SunCoke Energy Partners, G.P. LLC (SXCP GP), a Delaware limited liability company. D.I. 55 ¶ 39.

Section 7.9(c) of the partnership agreement that governs SXCP contains the following "safe harbor" provision:

> Whenever a potential conflict of interest exists or arises between the General Partner or any Affiliates, on the one hand, and the Partnership, any Group Member or any Partner, any other Person who acquires an interest in a Partnership Interest or any other Person who is bound by this Agreement on the other hand, the General Partner may in its discretion submit any resolution or course of action

---

[1] In considering Defendants' motion, I accept as true all factual allegations in the Consolidated Class Action Complaint and view those facts in the light most favorable to Plaintiffs. *See Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

> with respect to such conflict of interest for (i) Special Approval or (ii) approval by the vote of a majority of the Common Units (excluding Common Units owned by the General Partner and its Affiliates). If such course of action or resolution receives Special Approval or approval of a majority of the Common Units (excluding Common Units owned by the General Partner and its Affiliates), then such course of action or resolution shall be conclusively deemed approved by the Partnership, all the Partners, each Person who acquires an interest in a Partnership Interest and each other Person who is bound by this Agreement, and shall not constitute a breach of this Agreement, of any Group Member Agreement, of any agreement contemplated herein or therein, or of any fiduciary or other duty existing at law, in equity or otherwise or obligation of any type whatsoever.

D.I. 57-2, Ex. D § 7.9(c). "Special Approval" is defined by the partnership agreement to mean "approval by a majority of the members of the Conflicts Committee." *Id.* § 1.1. The partnership agreement requires that the Conflicts Committee be comprised of two or more directors who have no affiliation with or ownership interest in SXCP GP or SXCP GP's affiliates. *Id.*

On February 5, 2019, SunCoke Energy, Inc. (SunCoke) and SXCP announced an agreement for SunCoke to acquire all outstanding common units of SXCP not already owned by SunCoke in a stock-for-unit merger transaction. D.I. 55 ¶ 44. The merger was approved by SXCP's Board of Directors and a majority of the members of the Conflicts Committee. D.I. 57-2, Ex. A at 2–3. It was also approved by "holders of a majority of the outstanding [SunCoke] common shares and SXCP common units." D.I. 55 ¶ 44. SunCoke "indirectly

2

own[ed] a sufficient percentage of the SXCP common units to approve the transaction on behalf of the holders of SXCP common units." *Id.* The merger closed on June 28, 2019.

Plaintiffs allege in their Complaint that Defendants' actions taken in connection with the merger violated federal securities laws, Defendants' obligations under the SXCP partnership agreement, and Delaware state laws.

## II. LEGAL STANDARD

To state a claim upon which relief can be granted a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering Rule 12(b)(6) motions to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to plaintiffs. *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d Cir.

3

2008). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted).

## III. ANALYSIS

### A. The § 14(a) Claims

Counts I and II of the Complaint allege that all Defendants violated Section 14(a) of the Securities Exchange Act and rules promulgated pursuant to Section 14(a) by the U.S. Securities and Exchange Commission (SEC). D.I. 55 ¶¶ 147–162. Section 14(a) prohibits the solicitation of a shareholder's vote "in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78n(a)(1).

To prove a violation of Section 14(a), a plaintiff must prove transaction causation, i.e., that the solicitation materials themselves, "rather than the particular defect in the solicitation materials, w[ere] an essential link in the accomplishment of the transaction." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970). Solicitation materials are only essential when they "link[] a directors' proposal with the votes legally required to authorize the action proposed." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991).

In this case, under *Virginia Bankshares*, Plaintiffs have not pleaded and cannot plead transaction causation because their votes were not needed to authorize

4

the merger. It is undisputed that SunCoke owned a sufficient percentage of SXCP to approve the transaction on its own. Therefore, the solicitation materials were not an essential link in the accomplishment of the transaction.

Citing § 7.9(c) of the SXCP partnership agreement, Plaintiffs argue that *Virginia Bankshares* does not apply because SunCoke "did not have the authority to exercise its control in *this Transaction* unless it obtained the Special Approval from minority unitholders' agent, the Conflicts Committee." D.I. 58 at 7 (emphasis in original). This argument fails for two reasons. First, the Conflicts Committee was not the minority unitholders' agent. Rather, the Conflicts Committee acted on behalf of the Partnership. *See* D.I. 57-2, Ex. D § 7.9(c). Second, SXCP's authority to approve the transaction did not come from § 7.9(c). Section 14.3(b) of the partnership agreement governs approval of mergers and it provides that a merger "shall be approved upon receiving the affirmative vote or consent of the holders of a Unit Majority." *See* D.I. 57-2, Ex. D § 14.3(b). Section 7.9(c), by contrast, is a safe harbor provision for conflicted transactions. Section 7.9(c) is not mandatory; nor is it a prerequisite for a merger. It merely provides that if a contemplated transaction presents a conflict of interest, the consummation of that transaction will not give rise to liability for breach of contract, fiduciary, or other legal duty if either (1) the majority of the Conflicts Committee approves the transaction (i.e., "Special Approval" is obtained) or (2)

5

the majority of the unitholders not affiliated with the General Partner or its affiliates approves the transaction.

Plaintiffs also argue that application of *Virginia Bankshares* is "foreclose[d]" because the "Conflicts Committee's Special Approval was a sham process undertaken in bad faith . . . ." D.I. 58 at 8. Plaintiffs allege that two circumstances evince bad faith: (1) the Conflict Committee based its approval on "incomplete and flawed information" and (2) the Committee's approval "was obtained before the final S-4/A was issued." D.I. 58 at 8. Reliance on incomplete and flawed information, however, does not constitute bad faith. *Cf. In re Essendant, Inc. Stockholder Litig.*, 2019 WL 7290944, at *13 (Del. Ch. Dec. 30, 2019) ("Plaintiffs' process-related allegations of bad faith are likewise deficient. In the context of a sale of corporate control, bad faith is qualitatively different from 'an inadequate or flawed effort' to obtain the highest value reasonably available for a corporation. Absent direct evidence of an improper intent, a plaintiff must point to 'a decision that lacked any rationally conceivable basis' associated with maximizing stockholder value to survive a motion to dismiss.") (citations omitted); *see also Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009) ("[T]here is a vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties. Directors' decisions must be reasonable, not perfect.") (citing *Paramount Commc'ns Inc. v. QVC Network Inc.*,

6

637 A.2d 34, 45 (Del. 1994)). And the parties to a merger agreement reach that agreement before submitting the S-4 registration statement to the SEC. Indeed, SEC merger and acquisitions regulations expressly require that the registrant summarize the terms of the merger agreement in the Form S-4. 17 C.F.R. § 229.1011(a)(1).

Because Plaintiffs have not pleaded and cannot plead transaction causation, Plaintiffs have not alleged § 14(a) violations.

### B. The § 20(a) Claim

Count III of the Complaint alleges that members of SunCoke and SXCP GP's boards of directors violated § 20(a) of the Exchange Act. "Section 20(a) imposes liability on controlling persons who aid and abet violations of the [Exchange Act.]" *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 285 (3d Cir. 2010). Because Plaintiffs' § 20(a) claim is predicated on their § 14(a) claims, the § 20(a) claim fails for the same reasons Plaintiffs' § 14(a) claims are not cognizable.

### C. The Safe Harbor Provision

Counts IV through VII of the Complaint allege that SXCP GP and the members of its board breached their fiduciary duties, contractual obligations, and the implied contractual covenant of good faith and fair dealing. D.I. 55 ¶¶ 170–77. Defendants argue that because SXCP GP complied with the safe harbor provision in § 7.9(c) by seeking and receiving Special Approval from the Conflicts

Committee for the merger, Plaintiffs are barred from alleging these state law claims. *See* D.I. 57 at 19.

"Delaware alternative entity law is explicitly contractual; it allows parties to eschew a corporate-style suite of fiduciary duties and rights, and instead to provide for modified versions of such duties and rights—or none at all—by contract." *Emps. Ret. Sys. of City of St. Louis v. TC Pipelines GP, Inc.*, 2016 WL 2859790, at *1 (Del. Ch. May 11, 2016), *aff'd sub nom. Emps. Ret. Sys. of the City of St. Louis v. TC Pipelines GP, Inc.*, 152 A.3d 1248 (Del. 2016) (citation omitted). The only duty parties "'may not eliminate'" is the "'implied contractual covenant of good faith and fair dealing.'" *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013) (quoting 6 Del. C. § 17-1101(d)).

Because Defendants sought and received Special Approval for the merger from the Conflicts Committee, they are entitled to the protection of § 7.9(c)'s safe harbor provision and cannot be sued for a breach of SXCP's partnership agreement or any fiduciary or other duty existing at law. *Accord In re Encore Energy Partners LP Unitholder Litig.*, 2012 WL 3792997 at *15 (Del. Ch. Aug. 31, 2012) (holding that "[b]ecause the Conflicts Committee satisfied their express and implied duties under the LPA in giving their Special Approval to the Merger, Section 7.9(a) precludes Plaintiffs from stating a claim against any of the

8

Defendants for breach of the LPA or of any duty stated or implied by law and equity.")

Plaintiffs argue that under *Dieckman v. Regency GP LP*, 155 A.3d 358 (Del. 2017) even though Defendants received Special Approval from the Conflicts Committee, Defendants are still liable because the Special Approval procedure was "a sham process." D.I. 58 at 18. As in this case, the partnership agreement at issue in *Dieckman* had a safe harbor provision that made the general partner immune from conflict-of-interest-based liability if a challenged transaction were approved by a conflicts committee comprised of members unaffiliated with the parties to the transaction. Applying the doctrine of the implied covenant of good faith and fair dealing, the Court held in *Dieckman* that the safe harbor provision

> impl[ies] a condition that a [Conflicts] Committee has been established whose members genuinely qualified as unaffiliated with the General Partner and independent at all relevant times. Implicit in the express terms [of the safe harbor provision] is that the [Conflicts] Committee membership be genuinely comprised of qualified members and that deceptive conduct not be used to create the false appearance of an unaffiliated, independent [Conflicts] Committee.

155 A.3d at 369.

Plaintiffs argue that the Special Approval procedure was a "sham process" for three reasons: (1) the Conflicts Committee "considered only information provided and evaluated by conflicted parties;" (2) Defendants "hurriedly locked

9

the deal in place whereby the Conflicts Committee could not review the forthcoming public disclosures mandated and policed by the SEC;" and (3) the Conflicts Committee "did not consider any new information about the Transaction in the four months prior to closing, including a downturn in market conditions and the allegations made in lawsuits by unitholders." D.I. 58 at 18. None of these allegations, however, amount to misleading or deceptive conduct or call into question the independence of the Conflicts Committee. Accordingly, Defendants are entitled to the protection of the partnership agreement's safe harbor provision.

### D. Aiding and Abetting Breach of Contract

Count VIII of the Complaint alleges that SunCoke and its directors aided and abetted breach of contract. D.I. 55 ¶¶ 178–179. Because Plaintiffs fail to state a claim for breach of contract, Plaintiffs necessarily fail to state a claim for aiding and abetting breach of contract. *See In re El Paso Pipeline Partners, L.P. Derivative Litig.*, 2014 WL 2768782 at *23 (Del. Ch. June 12, 2014).

### IV. CONCLUSION

For the foregoing reasons, I will grant Defendants' motion to dismiss.

The Court will issue an Order consistent with this Memorandum Opinion.